UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| C.G. KIRKMAN, JR.,<br>        Plaintiff | :<br>:<br>: |
| v. | :    3:06cv393 (MRK) |
| | :<br>: |
| CHRISTIAN L. MARTIN AND<br>TAILWATER, INC.,<br>        Defendants. | :<br>:<br>: |

# RULING AND ORDER

In this action, *pro se* Plaintiff C.G. Kirkman, Jr., who lives in Connecticut, sues Defendants Christian L. Martin and Tailwater, Inc., an individual and corporation domiciled in Oklahoma, for a host of claims arising from working interests in four oil leases sold by the Defendants to Mr. Kirkman. *See* Complaint [doc. # 1]. These oil leases are located in Kansas. Mr. Martin and Tailwater have filed a motion to dismiss Mr. Kirkman's claims under *Federal Rules of Civil Procedure* 12(b)(2), 12(b)(6), and 41(b), or to transfer this case to the District of Kansas pursuant to 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses [and] in the interest of justice." *See* Motion to Dismiss or Transfer [doc. # 9]. For the reasons stated below, the Court GRANTS Defendants' Motion [doc. # 9] insofar as it seeks to transfer this case to Kansas, and DENIES the Motion [doc. # 9] on all other grounds without prejudice to renewal in the District of Kansas.

Section 1404(a) gives district courts "considerable discretion . . . to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Red Bull Assocs. v. Best Western Int'l, Inc.*, 862 F.2d 963, 967 (2d Cir. 1988) (quoting *Van Dusen*

*v. Barrack*, 376 U.S. 612, 622 (1964)).  The burden of justifying transfer of venue under § 1404(a) lies with the moving party, who must make a clear and convincing showing that transfer should be made.  *See Matera v. Native Eyewear, Inc.*, 355 F. Supp. 2d 680, 687 (E.D.N.Y. 2005) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001)); *see also O'Brien v. Okemo Mountain, Inc.*, 17 F. Supp. 2d 98, 104 (D. Conn. 1998) (stating that movant has the burden to show that the relevant factors "strongly favor" transfer).

Defendants raise many grounds which, they argue, support a motion to transfer venue to Kansas.  First, they point to the following language from the Operating Agreements for the oil leases in dispute:  "The agreement, and all matters pertaining hereto, shall be interpreted, governed and determined under the laws of the State of Kansas.  The parties irrevocably consent that jurisdiction of any and all matters arising hereunder shall rest exclusively in a District Court in the State of Kansas."  *E.g.*, Affidavit of Simon Allentuch [doc. # 11], Exh. 1 at 8 ("Schlagel Lease").

Mr. Kirkman responds that he signed the Operating Agreements only for two of the leases in question (the Schlagel and Noe leases) but did not sign the Operating Agreements for the other two (the Hastert and West Hastert leases).[1]  Mr. Kirkman argues that, because he did not sign the Operating Agreements for the Hastert and West Hastert leases, he did not consent to have his claims arising from these leases heard in Kansas.  Although Mr. Kirkman argues that he should not be bound by the forum selection clauses in the Operating Agreements he did not sign, it appears that he otherwise conducted himself as if the Operating Agreements for the Hastert and West Hastert leases were in full force. *See, e.g.*, Compl. [doc. # 1] at ¶ 35 ("Kirkman was becoming increasingly

---

[1] The forum selection clauses in the Operating Agreements not signed by Mr. Kirkman are identical to those in the leases signed by Mr. Kirkman.

2

dissatisfied with untimely payments from Tailwater on the Hastert and West Hastert leases, [and] sent a fax to Martin telling him to arrange for payment to be made directly to Kirkman by the oil company.  After Martin refused to do this, Kirkman contacted the oil company directly and filed the DIVISION ORDERS to have the revenues paid directly to Kirkman by the oil company.").

"The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001).  This Court will not permit Mr. Kirkman to claim the benefits of an enforceable oil lease and then argue that he did not consent to the forum selection clause in such lease, especially when it is identical to those found in the Operating Agreements he admittedly did sign.  The Court notes, however, that even if it were to find the forum selection clauses from the Hastert and West Hastert leases inapplicable, the Court would still transfer venue on Mr. Kirkman's claims arising under these leases to Kansas, because the forum selection clauses in the Schlagel and Noe leases are valid and, as discussed below, the balance of other factors counsels transfer "[f]or the convenience of parties and witnesses [and] in the interest of justice."  28 U.S.C. § 1404(a).

Mr. Kirkman also argues that he did not consent to exclusive jurisdiction in Kansas on any claims arising under the oil leases.  In making this argument, he points to the forum selection language in an oil lease Participation Agreement.  *See* Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss or Transfer [doc. # 29] at 11-12. The Participation Agreement states that its terms and provisions govern "[i]n the event of any ambiguity" with the Operating Agreements.  Mr. Kirkman argues that there is such an ambiguity between the forum selection language in the Operating Agreement and the forum selection language in the leases' Participation

Agreements. The operative language from the Participation Agreements is quoted here in full:

> 2. In the event Participant resides in or is domiciled in a state or jurisdiction other than Kansas, which has enacted a securities act of "Blue Sky Law" under which any interest created or conveyed pursuant to this agreement is deemed a "security" and which act or law does not provide for the exemptions from registration provided for under the Kansas Securities Act, K.S.A. 177-1252, et seq., in effect on the date of this agreement, or which is otherwise inconsistent with, or provides remedies in addition to, such Kansas act, then Participant hereby irrevocably consents to exclusive applicability of such Kansas act and the remedies available thereunder. Jurisdiction of any action brought thereunder shall lie solely in a Kansas court of competent jurisdiction.

Pl.'s Mem. in Opp'n [doc. # 29] at 12. Mr. Kirkman argues that he "only consented to jurisdiction in a Kansas Court for an action brought under 'Blue Sky Law' . . . ." *Id.*

The Court is unpersuaded. Mr. Kirkman points to no particular way in which the provisions of the Operating Agreement and the Participation Agreement are ambiguous or mutually exclusive. Rather, it seems clear and unambiguous to the Court that the forum selection clause in the Operating Agreement sets out the general agreement between the parties to litigate their claims under the laws and in the courts of Kansas, while the forum selection clause in the Participation Agreement gives particular notice to out-of-state "Participants" that their own blue sky laws will not protect them should the Participants later argue that the Defendants failed to register the oil lease interests as "securities." Because the Operating and Participation Agreements are not ambiguous on this point, the forum selection clause in the Operating Agreements is operative and enforceable against Mr. Kirkman.

In *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-31 (1988), the Supreme Court addressed the effect of a forum selection clause on the § 1404(a) inquiry. Recently, Judge Janet Bond Arterton of this Court succinctly summarized the Supreme Court's holding in *Stewart* as

follows:

> While the *Bremen/Carnival Cruise* line of precedent makes forum selection clauses, if enforceable, dispositive of jurisdictional issues and determinations of improper venue, the Supreme Court has adopted a more flexible approach in the context of a motion to transfer to a more convenient venue under 28 U.S.C. § 1404(a). In *Stewart* . . . the Supreme Court held that while a forum selection clause should be "a significant factor" in the district court's decision on whether to transfer venue, Section 1404(a) required courts to take into account other, equally important considerations. As the Court concluded, "Section 1404(a) directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs. The district court must also weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.' "

*United Rentals, Inc. v. Pruett*, 296 F. Supp. 2d 220, 228 (D. Conn. 2003) (quoting *Stewart*, 487 U.S. at 30 (citations omitted). The Second Circuit has put it similarly: "Congress declared two factors decisive on a motion for transfer pursuant to § 1404(a). The private convenience of the parties . . . was only one of the elements to be considered. The other component of the analysis – the interest of justice – is not properly within the power of private individuals to control." *Red Bull*, 862 F.2d at 967.

Applying these standards to the present motion, the Court concludes that Mr. Martin and Tailwater have met their burden under § 1404(a). The Court reaches this conclusion for several reasons. First, although the parties' forum selection clause may not be determinative on a § 1404(a) transfer motion, the parties' agreement on the appropriate forum for their disputes is entitled to significant weight in the analysis. *Stewart*, 487 U.S. at 29. The forum selection agreement between the parties represents their considered choice to locate all litigation between them in Kansas, a state that has a clear connection to the dispute since it is the place where the oil leases are located. The Supreme Court's observation about the benefits of forum selection clauses in *Carnival Cruise Lines,*

5

*Inc. v. Shute*, 499 U.S. 585, 593-94 (1991), applies equally to this case:

> [A] clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions. Finally, it stands to reason that passengers who purchase tickets containing a forum clause like that at issue in this case benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued.

*Id.* at 593-94 (citations omitted). While courts ordinarily give strong weight to a plaintiff's choice of forum, *see, e.g.*, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Pitney Bowes, Inc. v. Nat'l Presort, Inc.*, 33 F. Supp. 2d 130, 131 (D. Conn. 1998), "because such a negotiated designation creates legitimate expectations, the contract designation is conclusive of the interests of convenience and justice as between the parties and in most instances the clause will be given controlling weight." *TUC Elecs., Inc. v. Eagle Telephonics, Inc.*, 698 F. Supp. 35, 39 (D. Conn. 1988); *see Orix Credit Alliance, Inc. v. Mid-South Materials*, 816 F. Supp. 230, 234 (S.D.N.Y. 1993) ("A forum selection clause is determinative of the convenience to the parties."); *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) ("[A] valid forum-selection clause may waive a party's right to assert his own inconvenience as a reason to transfer a case.").

In addition, while the convenience of Mr. Kirkman's principal non-party witness may favor a Connecticut forum, the vast majority of witnesses whom each party expects to call at trial and the vast majority of the physical and documentary evidence is located in Kansas. *See* Defs.' Mot. to Dismiss or Transfer [doc. # 9] at 11; Defendant's Reply Memorandum of Law [doc. # 36] at 6; Pl.'s Mem. in Opp'n [doc. # 29] at 13-14 and Ex. B; *see also Elite Parfums, Ltd., v. Rivera*, 872 F. Supp. 1269, 1272 (S.D.N.Y. 1995) ("[M]ere inconvenience and expense of traveling are not, standing

alone, adequate reasons to disturb the parties' contractual choice of forum.") (internal quotation marks omitted). As to Mr. Martin's principal non-party witness, who will be beyond the Kansas Court's subpoena power, *see* Pl.'s Mot. in Opp'n [doc. # 29] at 14 and Ex. B, the parties can always take his deposition, including preserving his trial testimony through a videotaped deposition. It is not at all unusual in today's federal courts to have non-party witnesses appear at trial via videotaped depositions. Indeed, they may already need to do so in conjunction with a lawsuit currently pending between these two parties in Kansas state court. Given the small number of non-party witnesses beyond the Kansas Court's subpoena power, the need to take videotaped depositions is not a sufficient hardship to justify disturbing the parties' contractual choice of forum. *See A.I. Int'l Corp. Holdings, Inc. v. SurgiCare, Inc.*, 2003 WL 22705128, at *4 (S.D.N.Y. Nov. 17, 2003); *JVC Prof'l Prods., Co. v. HT Elecs., Inc.*, 1999 WL 1080280, at *3 (S.D.N.Y. Dec. 1, 1999). Rather, forcing the Defendants to depose the vast majority of non-party witnesses and to arrange for videotaped trial testimony of these witnesses, in addition to forcing extensive discovery in a forum remote from the trial in order to accommodate the Plaintiff's sole non-party witness (since Mr. Kirkman's convenience has already been determined according to the enforceable forum selection clauses) would work a substantial hardship on the Defendants. Thus, transfer to the District of Kansas is in "the convenience of parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a).

Finally, the public interest factors – such as concerns for ensuring a speedy trial and having a judge who is familiar with the applicable law – favor transfer. Although Mr. Martin has filed many claims under Connecticut state law, the Operating Agreements have designated Kansas law to govern claims arising from the oil leases. Since the Operating Agreements include a choice of law provision, the case may involve significant issues of Kansas law, with which the Kansas federal

courts are more familiar than this Court. This Court does not, of course, rule on the validity of the choice of law provision found in the Operating Agreements. That decision is left to the District of Kansas. However, should that court decide that Connecticut law applies to this case, this Court is confident that a Kansas federal court would also be able to maneuver through the intricacies of Connecticut law. Mr. Kirkman seems to admit as much in his Memorandum in Opposition. *See* Pl.'s Mem. in Opp'n [doc. # 29] at 6 ("[A]ll District Courts are competent to hear Claims involving all state substantive law.").

In sum, Defendants have carried their weighty burden under 28 U.S.C. § 1404(a) to demonstrate that a transfer of venue is justified "[f]or the convenience of parties and witnesses [and] in the interest of justice." Accordingly, the Court GRANTS the Defendants' Motion to Dismiss or Transfer [doc. # 9] to the extent that it seeks a transfer of venue to Kansas, and DENIES it without prejudice on all other grounds. **The Clerk is directed to transfer this case to the United States District Court for the District of Kansas.**

                          IT IS SO ORDERED,

                          /s/      Mark R. Kravitz
                              United States District Judge

Dated at New Haven, Connecticut: **October 24, 2006**